Virgil MARCUM, Plaintiff-Appellant,

v.

Frank M. SAGEHORN and Sinclair Oil Company, Defendant-Respondent.

No. 46295.

Missouri Court of Appeals, Eastern District, Division Two.

Oct. 25, 1983.

Harold G. Johnson, St. Ann, for plaintiff-appellant.

Lamar E. Ottsen, Clayton, Gerard Timothy Carmody, St. Louis, for defendant-respondent.

GAERTNER, Judge.

In this case seeking damages for alleged false arrest and malicious prosecution, we are called upon to determine the propriety of the granting of Motions for Directed Verdicts at the conclusion of plaintiff's opening statement.

The opening statement of plaintiff's attorney can be summarized as follows:

On December 23, 1975, defendant Frank Sagehorn operated a gasoline service station under a lease from defendant Sinclair Oil Company. On that date one of Sagehorn's employees cashed a $30 check which was signed by "Virgil Marcum." It was presented by Virgil Pryse Marcum, the son of plaintiff, who was, at the time of trial, in the penitentiary for writing other bad checks. When the check bounced, Sagehorn telephoned plaintiff and demanded payment. Plaintiff responded that he didn't owe Sagehorn any money and would not pay any money. Subsequently, Sagehorn again called the Marcum residence and was told by another of plaintiff's sons that his brother had written a lot of bad checks, that the brother no longer lived there and that his father had not written the check.

The next thing plaintiff knew about the incident occurred some four months later when a police officer appeared at his home with a warrant for his arrest. He told the officer that she was probably looking for his son. After the officer verified the information on the warrant regarding date of birth, height and weight, plaintiff was taken to the police station, booked and charged with stealing under $150, a misdemeanor. The criminal charge was subsequently dismissed after Sagehorn advised the prosecut-

ing attorney of his inability to identify the person who wrote the check.

Plaintiff's attorney further advised the court and jury in his opening statement that he would produce the records of the prosecuting attorney showing that "a warrant [sic] was filed by Mr. Sagehorn" and that plaintiff's arrest was a result of "incorrect, inaccurate information on a warrant that was filed against him." He further promised to produce the "contracts, agreements, leases, dealer agreements and so forth" documenting what he claimed to be an agency relationship between Sinclair and Sagehorn. After advising the jury that this experience had affected plaintiff's employment on top secret projects at McDonnell-Douglas and that he was seeking compensatory and punitive damages, plaintiff's attorney concluded his opening statement.

Counsel for each defendant thereupon orally moved for dismissal of the case. A recess was declared and a discussion between the court and counsel ensued in chambers. Only portions of this discussion are on the record. Prior to a discussion "off the record," plaintiff's attorney is recorded as speaking only once, to correct the trial judge's mistaken impression that the prosecution was by Grand Jury indictment when it had been commenced by information wherein Sagehorn was the "complaining party." After the "off the record" discussion, the trial judge pronounced his conclusion that on the authority of *Moad v. Pioneer Finance Co.,* "[e]ven assuming that Mr. Sagehorn came in and signed any document in the Prosecuting Attorney's office, the Court takes the position that the independent judgment of the Prosecuting Attorney's office, his discretion to proceed or not to proceed would eliminate any cause of action on the part of Mr. Marcum." Whereupon the trial judge directed verdicts in favor of both defendants.

Appellant here contends the trial court erred procedurally in directing the verdicts at the conclusion of opening statement and substantively in that his opening statement was sufficient to show a submissible case

against each defendant. First the substantive question.

Plaintiff's petition was in two counts, one malicious prosecution, the other false arrest. In directing the verdicts, the trial judge expressed his reliance on *Moad v. Pioneer Finance Co.,* 496 S.W.2d 794 (Mo.1973). This reliance was misplaced in two respects. First, *Moad* concerned malicious prosecution and was inapposite to the false arrest count. Secondly, as reflected by the judge's statement quoted above, he interpreted the filing of an information by the prosecuting attorney to be a total immunization of the complainant and an absolute bar to an action for malicious prosecution. *Moad* does not go so far.

"In determining whether proof of absence of probable cause was made by plaintiff, it is necessary to consider the manner in which the charge originated, because if the charge is initiated by indictment by a grand jury or by a prosecuting attorney on his sworn information and belief, either amounts to a prima facie showing that probable cause did exist for the prosecution. See *Pinson v. Campbell,* 124 Mo.App. 260, 101 S.W. 621, 624 (1907): "Malice and want of probable cause must coexist to warrant an action for malicious prosecution, and, where it is shown that the prosecutor consulted the prosecuting attorney in good faith, communicated to him all the ascertainable facts, and, acting on his advice, instituted the criminal proceeding, he should be exonerated. * * * The finding of an indictment by a grand jury, or the commitment of an examining magistrate, is prima facie evidence of probable cause. * * * On parity of reason, the filing of an information by a prosecuting attorney on his own information and belief is prima facie evidence of probable cause, but not so when the information is predicated on the affidavit of the complaining witness."

*Moad v. Pioneer Finance Co.,* 496 S.W.2d at 798, 799.

In *Moad* a directed verdict at the close of plaintiff's case was affirmed where plaintiff's evidence clearly showed the Prosecut-

ing Attorney executed a felony complaint based upon information furnished by a complaining witness plus his own independent investigation and there was no evidence that the basis for the charge was false.

This court, citing to *Moad,* succinctly stated the rule in *Hamilton v. Krey Packing Co.,* 602 S.W.2d 879, 882 (Mo.App.1980). "The prima facie showing of the presence of probable cause is conclusive unless rebutted by evidence that 'false testimony was the basis of the charge and that the falsity, if so, was discoverable upon reasonable investigation'."

We acknowledge the principle that "[i]f a trial court reaches a correct result but for the wrong reason, the appellate court must nevertheless affirm." *Scroggins v. State,* 604 S.W.2d 699, 701 (Mo. App.1980). An examination of the opening statement here reveals the inadequacy of the recitation of facts to establish a cause of action against these defendants for either false arrest or malicious prosecution. As to the latter, as has been demonstrated above, the opening statement is totally devoid of any claim which would refute the prima facie showing of probable cause which arises from the filing of the information by the Prosecuting Attorney. The statement "a warrant was filed by Mr. Sagehorn" is not only incorrect, as warrants are issued by judicial officers, but is also inadequate. Assuming the statement to refer to the complaint,[1] which was signed by Sagehorn, there is nothing false in the body of the document. The complaint appears to be a printed form in which blank spaces are filled by typewritten words. The gist of the offense as typed into the space provided is merely that the defendant uttered a $30 check knowing that he had insufficient funds with the intent to defraud. The only information upon the document which could be said to be false is contained in a separate box at the top of the page in which was typed, in addition to "Virgil Marcum, defendant" an address, date of birth, height and weight which we assume to be that of appellant. Also typed in the box below this description are "County P.D. 76–14839". The opening statement is silent regarding the source of this information or even if the box had been filled in when the form had been signed by Sagehorn. This silence, coupled with plaintiff's statement that, as a part of his case, he was going to prove that Sagehorn could not identify the individual who wrote the check, falls far short of demonstrating that the issuance of the information by the Prosecuting Attorney was based solely upon false information supplied by Sagehorn. For the same reason, the opening statement fails to state facts demonstrating a submissible case on the false arrest count. In a case somewhat analogous to the instant case, *Smith v. Allied Supermarkets, Inc.,* 524 S.W.2d 848 (Mo. banc 1975), the gist of a false arrest case was stated to be "Did the defendants cause or procure the arrest of this plaintiff?" *Smith* also involved a false arrest on a bad check charge of a plaintiff with the same first and last name of the culprit. There the similarity ends. In *Smith* the defendant supplied the authorities with a middle name not on the check, an address different from that on the check which had been drawn against a different bank than the bank at which plaintiff had advised the defendant he had an account. This furnishing of mis-information was held by the Supreme Court to show the defendant had not left it up to the authorities to investigate and determine whom to arrest. Rather, the supplying of the information was held to "support a jury finding that defendants did instigate the arrest of plaintiff, and that defendants did not just report an offense, request an investigation or merely supply incorrect information."

1. Copies of the complaint, information and warrant of arrest filed in connection with the charge of issuing a check with insufficient funds were certified by the Circuit Clerk to be a part of the Circuit Court file. Although plaintiff's attorney did not describe the content of any of these documents in his opening statement, the trial judge stated that he was taking judicial notice of the contents of the Circuit Court file in making his determination to direct the verdicts.

■ Here, plaintiff's opening statement is silent regarding the source of the descriptive data identifying the accused, "Virgil Marcum." There may even be an inference that Sagehorn was not the source of the information since plaintiff's attorney further stated he would prove that Sagehorn was unable to identify the check writer. In any event, the source of the incorrect identification information is crucial to plaintiff's claims of both malicious prosecution and false arrest.

This brings us to appellant's contention of procedural error. This Court recently addressed the propriety of directing a verdict after opening statement in *Chalet Apartments, Inc. v. Farm & Home Savings Ass'n, Inc.,* 658 S.W.2d 508 (Mo.App.E.D., 1983).

> "A motion for a directed verdict may be granted after plaintiff's opening statement where it affirmatively appears from the plaintiff's statement of the case that he cannot recover from the defendants. *Hanes v. Bacon Sales Co.,* 602 S.W.2d 50, 52 (Mo.App.1980). Such action should not be taken because of mere failure to state facts sufficient to constitute a submissible case 'unless counsel affirmatively admits that no additional facts will be shown by the evidence.' *Zabol v. Lasky,* 498 S.W.2d 550, 553 (Mo.1973). The rationale underlying this rule is stated in *Hays v. Missouri Pacific R.R. Co.,* 304 S.W.2d 800, 803 (Mo.1957), 'if counsel admits he is unable to prove facts essential to a recovery, or to disprove facts fatal to a recovery, there is no need of going to the trouble and expense of hearing evidence which, it is known in advance will be insufficient.' Although referring to it as a 'commendable practice,' 304 S.W.2d at 803, the *Hays* court cautions that directing a verdict at the conclusion of plaintiff's opening statement should be done only 'after counsel has been afforded an opportunity, after the motion for directed verdict has been made, to correct or add to his opening statement.' 304 S.W.2d at 805."

■ Here it does not affirmatively appear from plaintiff's opening statement that he cannot recover from the defendants. The opening statement is deficient in that it fails to include an element essential to both of plaintiff's claims, the source of the misinformation. If plaintiff can produce evidence to show that the identifying data was supplied by Sagehorn rather than being derived from police or Department of Revenue driver's license records, he should have been afforded an opportunity to augment his opening statement. The transcript of the record fails to reflect any such opportunity. Rather, the record shows nothing more than a mere failure to state sufficient facts without inquiry or opportunity to remedy the insufficiency. Such failure, in and of itself, does not justify depriving plaintiff of his day in court.

■ Moreover, these principles also mandate remanding the case as to defendant Sinclair. Although Sinclair argues that Sagehorn is an independent dealer and not an agent, plaintiff's opening statement makes no such admission. Rather, plaintiff's attorney stated he would offer documents leading to a contrary conclusion. The content of the documents was not described and they are not before us. Again, such inadequacy, standing alone, does not justify directing a verdict at the close of opening statement.

■ Sinclair's argument that its motion for summary judgment was erroneously overruled is premature. That order remains interlocutory and therefore nonappealable in view of the necessity of remanding the entire case to the trial court.

The judgment in favor of defendants is reversed and the cause remanded for further proceedings.

SNYDER, P.J., and DOWD, J., concur.