**Terry Ann GIBSON, a Minor et al, Plaintiffs–Appellants,**

v.

**Quinnie GRANT, a Minor, et al., Defendants–Respondents.**

No. 53789.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 31, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 28, 1989.

Application to Transfer Denied
April 18, 1989.

---

Casey & Meyerkord, Thomas J. Casey, St. Louis, for plaintiffs-appellants.

Wuestling, James & DeVoto, William F. James, Evans & Dixon, Patrick J. Phillips, St. Louis, Brinker, Doyen & Kovacs, P.C., John G. Doyen, Clayton, for defendants-respondents.

KAROHL, Judge.

Plaintiffs, Terry Ann Gibson and her parents, appeal dismissal on motions made at the close of opening statement for defendants Brian Gary and Jason Goddard. They also appeal after verdict and judgment in favor of the third defendant, Quinnie Grant. The court found plaintiffs' opening statement failed to sufficiently outline evidence that could prove to the jury that any act of Brian or Jason caused an injury to Terry's eye. She was struck in the eye by a BB at a time when the three defendants were shooting two BB guns in her direction. In the nature of things, one BB caused one injury, only one of the defendants shot the BB that caused the injury. Plaintiffs did not allege an agency liability theory.

On October 26, 1983, in a wooded area five boys, including the three defendants, shot at the waterline of a creek and at birds. Approximately thirty minutes after they began shooting, three girls, including Terry, and one boy entered the woods on the opposite side of the creek from where the boys were shooting. The children were approximately thirteen years old. The woods were a common play area for them. The girls were unaware the boys opposite them were shooting BB guns. Jason, Quinnie and Brian were the only people shooting BB guns in the woods. They had two guns, one owned by Quinnie, the other owned by Jason.

The two groups may have exchanged words across the creek that divided them. Defendant Quinnie said no conversation occurred. Several witnesses including Brian and Jason, testified at trial that Quinnie threatened to shoot the girls across the creek unless they left the woods. The girls ran from the woods with Terry in the lead. Shortly after Terry began to run, a BB from one of the two guns shared by the three boys hit her in the eye.

At trial, plaintiffs' opening statement outlined the events of October 26, 1983, that led to Terry's eye injury. At the close of the opening statement, however, Brian, Quinnie and Jason each made motions to dismiss because the opening statement did not indicate available proof that their acts contributed to the injury in any way. The court stated it could not determine what evidence would be produced at trial by the opening statement. The court allowed plaintiffs to reopen the opening statement on the basis of his comments. The court stated it would sustain the motion as to Brian and Jason unless the second part of the opening statement sufficiently set forth facts to be proved at trial demonstrating the negligence of Brian and Jason contributed to the BB shooting of Terry.

Plaintiffs then reopened their opening statement by stating generally that the evidence would indicate "there is only one BB in Terry Gibson's right orbit and the reason three defendants have been joined is because we have conflicting evidence concerning who it was that fired the gun that shot the BB into her eye. There will be evidence from which you can infer that any one of the three fired that BB that hit Terry Gibson." Plaintiffs concluded the opening statement by stating that it would be the jury's determination as to which of the three, Brian, Quinnie or Jason, was the boy that fired the shot that hit Terry. This is not a case where plaintiffs could prove injury but could not prove by direct evidence causation between acts of various defendants and the claimed injury.

Following the conclusion of the reopened opening statement, in a conference in chambers, both Brian and Jason again made a motion to dismiss on the ground "that there [was] no legal basis for them being in the case." Plaintiffs responded that all three boys, Brian, Jason and Quinnie "had means and opportunity and one of the three shot her."

The court did not accept plaintiffs' argument that each of the defendants had "the means and opportunity" to shoot Terry. The court found the opening statement did not sufficiently "hold" Brian and Jason in the trial. The court dismissed Brian and Jason on the grounds that plaintiffs' opening statement failed to state evidence from which a jury could infer that either defendant's negligence contributed to the shooting of Terry.

First, Plaintiffs assign error of the trial court for:

Sustaining motions to dismiss or for directed verdicts for respondents Jason Goddard and Brian Gary after [her] opening statement because ... [the] opening statement indicated that she would make a submissible case against all three respondents, Jason Goddard, Brian Gary, and Quinnie Grant, in that there would be conflicting evidence as to which two of the three boys were holding the two rifles and as to which one of the

three had negligently fired the shot which struck [her] in the eye.

Plaintiffs contend they were clearly prejudiced by the removal of Brian and Jason because Quinnie was then able to "point the finger" at a person no longer a party to this suit. In fact, Quinnie testified that he and Brian shot their guns, but the BB from Brian's gun hit Terry in the eye. This is inconsistent with his deposition testimony, if plaintiffs' opening statement is correct. In that statement it was said Quinnie was deposed to say he and Jason had the guns.

 The primary purpose of an opening statement is not to test the sufficiency of plaintiff's anticipated evidence, but is to inform the judge and the jury in a general way of the nature of the action so as to enable them to understand the case and to appreciate the significance of the evidence as it is presented. *State ex rel. State Highway Commission of Missouri v. Select Properties, Inc.*, 612 S.W.2d 866, 870 (Mo.App.1981). Counsel is properly permitted considerable latitude in making the opening statement. *Cantrell v. Superior Loan Corporation*, 603 S.W.2d 627, 641–42 (Mo.App.1980). The opening statement is usually only an outline of anticipated proof and not a detailed statement. *State v. Fleming*, 523 S.W.2d 849, 852 (Mo.App. 1975). Counsel is not required nor expected to recite every detail of evidence to be offered, nor is he confined in his evidence to the proof of facts recited in the opening statement. *Hays v. Missouri Pacific Railroad Co.*, 304 S.W.2d 800, 804 (Mo.1957). The mere insufficiency of the opening statement to recite facts which show that plaintiff's anticipated evidence would, as a matter of law, present a submissible case, is not of itself standing alone, sufficient justification to stop the case at that point and direct a verdict for defendant. *Marcum v. Sagehorn*, 660 S.W.2d 426, 430 (Mo.App.1983) (relying on *Chalet Apartments, Inc. v. Farm & Home Savings Ass'n Inc.*, 658 S.W.2d 508 (Mo.App.1983)).

 The general rule is that courts should be reluctant to direct a verdict at the close of plaintiff's opening statement. However, a directed verdict at this stage is

appropriate when it affirmatively appears that the whole of plaintiff's case has been fully and completely set forth in the opening statement, and it clearly and definitely appears, as a matter of law, that proof of all the facts recited, together with all reasonable inferences in favor of plaintiff, would not result in a submissible case. *Hanes v. Bacon Sales Co.*, 602 S.W.2d 50, 52 (Mo.App.1980). In that event the trial court may direct a verdict for defendant in order to avoid the unnecessary and useless procedure of taking testimony which is known in advance to be insufficient. *Hays*, 304 S.W.2d at 804. The court should direct a verdict only when it affirmatively appears that plaintiff's case has been fully stated and after counsel has been afforded an opportunity, after the motion for directed verdict has been made, to correct or add to his opening statement. *Chalet Apartments Inc. v. Farm & Home Savings Ass'n Inc.*, 658 S.W.2d 508, 509 (Mo.App. 1983).

 The opening statement contained the following outline of facts to be proved at trial: 1) Quinnie, Jason, and Brian were shooting two guns at the time Terry was shot; 2) one gun belonged to Quinnie, the other to Jason; 3) the three boys were passing the guns among themselves; 4) all parties will admit that the BB that struck Terry came from a gun fired by one of the three boys; 5) Terry will state that the only boy she saw with a gun was Quinnie; 6) after running several seconds Terry turned to look for the others; 7) as she turned she was shot in the right eye and fell to the ground immediately; 8) Jason indicated in his deposition that at the time Terry was shot and immediately prior to the time Terry was shot, Brian and Quinnie each held the two guns; 9) Jason does not remember firing a gun [hence, *Brian* was the cause if the jury believed Brian and Quinnie had the guns and Quinnie was not the cause]; 10) the deposition of Brian indicates that at the time immediately prior to Terry being shot, he and Quinnie were the two boys holding the two guns; 11) Brian stated in his deposition that Quinnie fired from the gun he held but Brian did not [hence, *Quinnie* was the cause]; 12) Quinnie indicated in his deposition that when Terry was shot he held one gun and Jason held the other gun; and, 13) while Quinnie admitted that the BB that hit Terry must have come from either his gun or the gun held by Jason Goddard, he stated it was not from the gun which he held [hence, *Jason* was the cause].

Negligence of either Quinnie, Jason or Brian caused Terry's injury. Further, plaintiffs' opening statement did not affirmatively admit that no additional facts would be shown by the evidence. *Zabol v. Lasky*, 498 S.W.2d 550 (Mo.1973) teaches that a directed verdict for defendant at the close of an opening statement should be granted only if plaintiff: (1) by admission affirmatively demonstrates, as a matter of law, plaintiff has no cause of action or is not entitled to recover on his cause of action; or, (2) if the facts recited do not, as a matter of law, constitute enough to make a submissible case. *Id.* at 453–454. At most, plaintiffs admitted they expected recovery would be against one of the three defendants; the evidence would point to each one; the conflict would be for the jury to resolve. The recited facts were sufficient to support submission against all three defendants.

 The amended petition sufficiently states a cause of action in two counts. Count I states Terry was struck in the right eye by a BB and as a direct and proximate result of the aforesaid incident, has been caused to undergo certain reasonable and necessary and medical and hospital care treatment for the care of said injuries. Plaintiffs claim: 1) the aforesaid incident and resulting injury were directly and proximately caused by the negligence and carelessness of the defendants, Quinnie Grant, Jason Goddard and Brian Gary; 2) the aforementioned boys negligently and carelessly failed to keep a careful lookout prior to shooting a BB gun in the vicinity of herself; and, 3) the boys were negligent and careless in pointing or aiming a BB gun into a wooded area where she was located and in not controlling the direction of the gun while firing the same. Count II is a derivative claim by Terry's parents.

These allegations state a cause of action based on claims of negligence. Where, as here, plaintiffs have not affirmatively admitted that the facts recited constituted the whole of their anticipated proof, they are "entitled to the benefit of all facts proposed to be proved whether contained in the statement or pleadings ..., and the reviewing court must regard them as proved" for the purpose of ruling on whether the defendants are entitled to a directed verdict on her opening statement. *Hays*, 304 S.W.2d at 805–806.

■ Plaintiffs told the jury Terry did not know which of the three defendants fired the BB but one of them must have. The evidence would be conflicting only on who fired the BB. Quinnie, by deposition, said Jason was responsible. This would be sufficient to support a verdict against Jason. Jason said it was either Brian or Quinnie. But Quinnie denied responsibility. This would be sufficient to support a verdict against Brian. Brian said he and Quinnie had the guns and he did not shoot his gun. This was sufficient to submit against Quinnie. The outline of evidence was adequate to alert the jury of evidence sufficient to submit against all of the defendants in the alternative. Quinnie said he and Jason had the guns and he did not fire the BB. This evidence was sufficient to submit against all of the defendants in the alternative. There was direct evidence, although conflicting, on all three defendants.

■ Plaintiffs also claim a right to a retrial against defendant Quinnie Grant. They argue the error in dismissing claims against Brian and Gary after the opening statement denied them a right to try their single-injury claim against all three persons in a single trial where one of them must have caused the injury. Logic supports this claim. One of the three must be responsible. Defendants admit one of the three shot the BB. Plaintiff was denied the opportunity for a single jury to find, as a fact, which one. It is possible, if not probable, that a trial against only Brian and Jason will result in a verdict for both on the basis of a finding that Quinnie fired the BB that caused the injury. In view of the verdict and judgment in favor of Quinnie, such result would be tragic.

Defendant Quinnie concedes, for argument purposes only, the dismissals of Brian and Jason may have been erroneous. However, he claims plaintiffs proceeded after the erroneous order to proceed and to complete the trial on their claim against him. He argues that plaintiffs claim no independent error as to plaintiffs' trial against him. It is true that except for the absence of defendants Jason Goddard and Brian Gary, plaintiffs claim no other errors in the trial resulting in a verdict for defendant Quinnie. Further, Quinnie testified he did not shoot the offending BB. This testimony, if believed, supports the verdict.

The claim of error and the response are both meritorious. In view of our ruling of error in dismissing Jason and Brian, the ruling will place plaintiffs in a position to lose and they will lose an advantage on the issue of liability if not permitted to retry their claim against Quinnie. Liability of one of the defendants would have been an undisputed fact in a single trial. In a single trial the only question of fact on the issue of liability would have been which one of the defendants fired the BB that caused the injury. No such trial occurred and can never occur if the judgment for Quinnie is affirmed.

On the other hand, the error in dismissing the claims against Jason and Brian did not force plaintiffs to proceed against Quinnie only. At most, it forced a choice of proceeding or delaying the trial against Quinnie until the question of dismissal error was resolved. We need not and do not suggest the legal procedure to accomplish that approach but observe there were other legal means available, for example a nonsuit. Defendant Quinnie was a passive voice in plaintiffs' decision. Even if the dismissals were legally erroneous Quinnie was required to defend if plaintiffs chose to proceed. Plaintiffs did complete the trial. Under these circumstances we acknowledge the difficulty for plaintiffs but conclude plaintiffs are not entitled to another trial on the alternative claim against

Quinnie. It is relevant that no other claims of error in the trial were asserted by plaintiffs. Nor is it certain that plaintiffs will not prevail after remand.

We affirm the verdict and judgment in favor of Quinnie Grant. We remand for a trial on plaintiffs' claims against Jason Goddard and Brian Gary. Costs of this appeal are assessed against defendants Jason Goddard and Brian Gary equally.

GRIMM, P.J., and GARY M. GAERTNER, J, concur.